IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 15-cv-2832-WJM-CBS

VENANCIO TORRES VALLEJO, individually
and on behalf of all persons similarly situated,

    Plaintiff,

v.

CREATIVEXTERIORS, INC., and
JEFFREY MILLER,

    Defendants.

---

## ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

---

Before the Court is the parties' Joint Motion for Final Approval of Class Action Settlement ("Joint Motion"). (ECF No. 91). The Court held a settlement fairness hearing ("Settlement Hearing") on September 5, 2018. Considering the arguments raised in the Joint Motion and at the hearing, and for the reasons set forth below, the Court grants the Joint Motion and approves the Settlement Agreement (ECF No. 82-1), including an incentive payment for Plaintiff Venancio Torres-Vallejo and reasonable attorneys' fees and costs.

### I. BACKGROUND AND PROCEDURAL HISTORY

This action was filed on December 30, 2015 by Plaintiff on behalf of himself and others who worked as seasonal landscape laborers for CreativExteriors, Inc., and its president Jeffrey Miller (together, "Defendants") between 2010 and 2015 under the H-2B visa program. (ECF No. 1.) Plaintiff alleges that he and others were paid less than

required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the Colorado Minimum Wage Act ("CMWA"), Colorado Revised Statutes §§ 8-6-101 *et seq.*, and that Defendants breached their contractual obligations to pay Plaintiff and others the prevailing wage certified by the United States Department of Labor ("DOL") as part of the approval process for H-2B visas.[1]

Specifically, Plaintiff alleges that workers who began and ended their day at Defendants' storage yard were not compensated for time spent traveling from the yard to the first landscaping site or from the last landscaping site to the yard.  (ECF No. 1 ¶¶ 31–32.)  Plaintiff also alleges that he and others had unreimbursed expenses for, among other things, travel costs within Mexico and between Mexico and Colorado, visa application fees, and uniform laundering.  (*Id.* ¶¶ 27–30, 33–34.)  Finally, Plaintiff claims that Defendants failed to promptly comply when DOL raised the prevailing wage rate for landscape laborers as of July 10, 2013.  (*Id.* ¶ 39.)  Defendants contend that persons who were required to perform work in the yard at the beginning and end of each day were properly compensated; that persons who submitted travel and visa expenses were properly reimbursed; and that the 2013 DOL rate increase was *ultra vires*.  (ECF No. 82 at 3.)

On November 23, 2016, the Court granted class certification under Rule 23 of the CMWA and breach of contract claims, as well as conditional certification of a FLSA collective action.  (ECF No. 51.)  The difference between definitions for the FLSA collective action/Rule 23 CMWA class and Rule 23 breach of contract class is simply

---

[1] To the extent workers were not covered by contract, Plaintiff sought recover at the prevailing wage rate in *quantum meruit.*

the time span.  For the FLSA/CMWA class, the timeframe is 2013–2015;[2] for the breach of contract class, the timeframe is 2010–2015.[3]  (*Id.* at 34.)  The Court also addressed several other issues in the order granting certification.  With respect to the statute of limitations for the breach of contract and *quantum meruit* claims, it certified a breach of contract class covering claims arising from 2010 to 2015, but limited any recovery under *quantum meruit* to a three-year statute of limitations.  (*Id.* at 20.)  The Court also found that factual and legal issues distinguished U.S. workers from Mexican nationals, and thus excluded U.S. workers from proposed class definition.  (*Id.* at 22–23.)

That same day, the Court also approved Plaintiff's proposed plan to notify FLSA collective action and class members, directed Plaintiff to submit a revised class notice, and set forth deadlines for the opt-in and opt-out periods.  (ECF No. 52.)  The Court also denied Defendants Motion for Partial Summary Judgment (ECF No. 40) because the motion was procedurally deficient in ways that made it impossible for Defendants to carry their burden as the moving party.  (ECF No. 50.)

---

[2] Definition of the Rule 23 CMWA class and FLSA collective action:

> All foreign workers hired by CreativExteriors, Inc., under terms of the H-2B visa program to fill jobs described in its 2013, 2014, and 2015 labor certification applications.

(ECF No. 51 at 34.)

[3] Definition of the Rule 23 breach of contract class:

> All foreign workers hired by CreativExteriors, Inc., under terms of the H-2B visa program to fill jobs described in its 2010, 2011, 2012, 2013, 2014, and 2015 labor certification applications.

(ECF No. 51 at 34.)

3

On December 15, 2016, the Court approved a revised class notice. (ECF No. 58.) Thereafter, the parties submitted a Spanish translation and a notice of completion of mailing. (ECF Nos. 59; 60.) Twelve individuals opted into the FLSA action (for a total of thirteen FLSA collective action members). (ECF Nos. 61; 63; 65; 91 at 2.) Plaintiff also filed several notices that some individuals opted out of the class. (ECF Nos. 66–71; 73.)

On December 13, 2017, Defendants filed a notice of settlement with the Court, and six weeks later, the parties filed a Joint Motion for Preliminary Approval of Proposed Class Action Settlement Agreement and Notice to Class Members. (ECF Nos. 79; 82.) The Court preliminary approved the settlement on April 12, 2018, and ordered service of notice on the class members. (ECF No. 84.) Ultimately, 47 of the 58 class members timely filed valid claim forms with the class administrator and could recover under the Settlement Agreement. (ECF No. 91 at 4.) The parties filed the present Joint Motion for Final Approval of Class Action Settlement on August 22, 2018, and the Court held a Settlement Hearing on September 5, 2018. (ECF No. 91.)

## II. SETTLEMENT AGREEMENT ANALYSIS

In deciding whether to approve a settlement in class action, a court must determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Courts consider four factors in evaluating the settlement:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.

*Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002). The Court may also consider the fact that no objections were filed by any class members. *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) ("No timely objection was raised by any Class Member to the proposed settlement, and less than 5% of all Class Members have chosen to opt out. One untimely objection, improper in other regards, was filed and subsequently withdrawn prior to the fairness hearing. No objection was raised at the fairness hearing. The Court gives these factors substantial weight in approving the proposed settlement.").

Having thoroughly reviewed the settlement agreement and the Joint Motion, the Court finds that the settlement negotiated by counsel is fair, reasonable, and adequate. With regard to the four factors, the parties have demonstrated that the Settlement Agreement was negotiated at arms' length by counsel experienced in these types of cases. Counsel engaged in discovery, took three depositions (including that of Mr. Torres-Vallejo), undertook a detailed review of Defendants' billing records, negotiated a methodology for estimating damages, and engaged in mediation.

The parties have also shown that serious questions of fact and law exist, particularly with regard to the applicable statute of limitations, the validity of the mid-season 2013 DOL rate increases, and a factual dispute over whether class members

were in fact undercompenstated for travel time.  These factual and legal issues weigh in favor of approving the Settlement Agreement.

Further, the Court finds that the value of the Settlement Agreement outweighs the possibility of recovery after protracted litigation.  Courts have held that the presumption in favor of voluntary settlement agreements

> is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.  The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings.  This policy also ties into the strong policy favoring the finality of judgments and the termination of litigation.  Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts.  In addition to the conservation of judicial resources, the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010); *accord Hodge v. Signia Marketing, Ltd.*, 2017 WL 5900344 (D. Colo. Nov. 30, 2017).  The Settlement Agreement provides compensation to class action and collective action members commensurate with the number of seasons worked and their legal claims under the CMWA and/or the FLSA.  Defendants will pay over $332,000 to 47 class members, with individual recovery varying from $900 to $17,876.03, and an average individual settlement greater than $6,000.  (ECF No. 91-1 at 2–5.)  Class members will receive approximately 80% of their potential maximum individual damages.  (ECF No. 91 at 5.)  The Settlement Agreement provides a significant and immediate benefit to the class, particularly given Defendants' statement at the Settlement Hearing that CreativExteriors was unable to obtain H-2B visas for its workers for the 2018 season.

Finally, both parties have represented their view that the Settlement Agreement is fair and reasonable. The fact that no class member objects shows that the class also considers this settlement fair and reasonable. *See In re Dun & Bradstreet*, 130 F.R.D. at 372.

As set forth above, the Court finds that each of the four factors weighs in favor of finding that the Settlement Agreement is fair, reasonable, and adequate. Accordingly, the Court fully and finally approves the Settlement for purposes of Rule 23(e).

### III. INCENTIVE AWARD

When considering the appropriateness of an award for class representation, the Court should consider: (1) the actions the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010).

The parties propose that Mr. Torres-Vallejo receive $5,000 as an incentive payment. (ECF No. 91 at 8.) Mr. Torres-Vallejo spent time and effort working on the case with counsel against his (now former) employer over the course of three years of litigation, participated in discovery, and was deposed. The litigation yielded individual payouts to a group of seasonal Mexican workers ranging from $900 to $17,876.03. Mr. Torres-Vallejo's commitment to the case, the risk he took pursuing this litigation, and the outcome achieved warrants a significant award in this case. *See Pliego v. Los*

*Arcos Mexican Rests., Inc.*, 313 F.R.D. 117 (D. Colo. 2016) (finding a service award appropriate where an immigrant plaintiff "took a substantial risk in coming forward with reports of Defendants' wage and hour law violations"); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (noting that service awards are especially appropriate in employment litigation where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

The Court finds the incentive payment of $5,000 reasonable, given Mr. Torres-Vallejo's participation in the case and the overall recovery in this case, and thus approves the $5,000 incentive award to Mr. Venancio Torres-Vallejo.

### IV. ATTORNEYS' FEES

When considering the appropriateness of an attorneys' fees award, the Court considers the "*Johnson* factors": (1) the time and labor required by counsel; (2) the novelty and difficulty of the legal question presented; (3) the skill required to represent the class appropriately; (4) the preclusion of other employment by the attorneys due to the acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys, (10) the "undesireability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1979).

The Court finds that the requested amount of fees is reasonable considering the effort expended on this case by class counsel, the risks and difficulties inherent in this sort of litigation, the discovery undertaken, the detailed review of thousands of pages of payroll records, and the skill required and dedication displayed over the litigation of this matter. Counsel spent an estimated 460 hours[4] on this matter. The rates charged by class counsel are reasonable, considering the geographic market and counsel's experience. Using the lodestar method, and without exercising billing judgment, attorneys' fees would be approximately $160,000. Counsel has exercised billing judgment in reducing the total requested amount to $125,000, inclusive of fees and costs. Like the class members, Plaintiff's counsel will receive around 80% of their actual fees and costs. Moreover, Plaintiff's attorneys' fees and costs constitute a reasonable 25.5% of the total value of the settlement. *See* Stuart J. Logan *et al.*, *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Rep. 167, 167 (2003) (reporting that the percentage of class recovery consumed by attorneys fees under $10 million averages between 30.4% and 31.9%, based on a survey of 1,120 cases); *Nilson v. York Cnty.*, 400 F. Supp. 2d 266, 281 (D. Me. 2005) (collecting cases and finding that the median for attorneys' fees awards in class action settlements was around 30%).

---

[4] These numbers are rounded, as appropriate. Plaintiff's claimed hours were lower than the billing records submitted. Plaintiff's counsel stated that they billed 457.23 hours. This number includes all of Tuddenham and Hoffman's hours, Turner's hours through the preliminary joint approval motion, an additional 41 hours for Turner for through the final joint approval motion (though the billing records reflect at total of 46 hours spent up to that point in the litigation), and Dominguez and Vasquez's paralegal hours through the preliminary joint approval motion. It does not include the additional 3.5 hours that paralegal Dominguez spent through the final joint approval motion or paralegal Solarski's 5.1 hours.

In addition, counsel incurred approximately $5,700 in costs, which are included in the requested amount of $125,000. The Court finds these costs reasonable and appropriate. *See Vaszlavik v. Storage Tech. Corp.*, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) ("[A]n attorney who creates or preserves a common fund for the benefit of the class is entitled to receive reimbursement of all reasonable costs incurred.").

The proposed award of $125,000 is reasonable, and the Court thus grants the Joint Motion with respect to attorneys' fees and costs.

## V.  CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. The parties' Joint Motion for Final Approval of Class Action Settlement (ECF No. 91) is GRANTED.
2. The parties' Settlement Agreement (ECF No. 82-1) is APPROVED.
3. Class counsel SHALL INFORM the Settlement Administrator of the identities of class members who elect to have their settlement payment mailed to them by express mail. The Settlement Administrator shall deduct from the 1099 damages check the cost of express mailing for those identified class members. Defendants shall not bear any costs associated with express mailing.
4. No later than **October 10, 2018**, the Settlement Administrator SHALL DISTRIBUTE to the named plaintiff, opt-in FLSA plaintiffs, and class members the payments in the amounts set forth under the terms of the Settlement Agreement, less the amount for express mailing for the class members identified by class counsel.

5.  Plaintiff Venancio Torres-Vallejo is AWARDED $5,000 as an incentive award for serving as the class representative.

6.  The Settlement Administrator SHALL FILE a final accounting and certification of completion of administration of the settlement no later than 100 days after mailing settlement checks to the class members but in any event no later than **January 23, 2019**.

7.  Plaintiff's attorneys' fees and costs SHALL BE PAID by Defendant in the amount of $125,000 no later than **October 10, 2018**.

8.  The Court SHALL RETAIN jurisdiction over the interpretation and implementation of the Settlement Agreement.

9.  The Clerk of the Court SHALL TERMINATE the case. The parties shall bear their own costs except as provided above.

Dated this 10th day of September, 2018.

BY THE COURT:

_William J. Martinez_
United States District Judge